UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number: 9:17-cv-81157-RLR

GORDON*HOWARD ASSOCIATES,
INC., d/b/a PASSTIME GPS
TRACKING SOLUTIONS,

      Plaintiff,

vs.

ALAN VORDERMEIER,

      Defendant.

_____/

## Defendant's Response to Renewed Motion to Stay Arbitration

Defendant Alan Vordermeier responds as follows to Plaintiff's Renewed

Motion to Stay Arbitration (DE 17) — a response that is destined to

somewhat resemble Defendant Alan Vordermeier's Rule 12(b) Motion to

Dismiss (DE 16) and Defendant Alan Vordermeier's Motion to Stay

Proceedings Pending Arbitration (DE 18), since all of the motions and

responses address offer opposite interpretations of the same case law.

### Introduction and Summary

Plaintiff's motion is rich in polemics, but lean on binding precedent in

support of its argument.  It asks this Court to do what both the Supreme

Court and the Court of Appeals for the Eleventh Circuit have said that it

cannot:  take out of an arbitrator's hands the question of whether an

**The Amlong Firm** • 500 Northeast Fourth Street • Fort Lauderdale, FL  33301 • 954.462.1983

employment contract, signed by a company's chief executive officer and

containing an arbitration clause, is valid.

### Statement of the Facts

To borrow from the motion's "Background" section,

> This action arises from an arbitration provision contained in a
> document that Defendant contends is an employment agreement
> between PassTime and Vordermeier (the "Purported Employment
> Agreement"). PassTime contends that it never entered into the
> Purported Employment Agreement and therefore never agreed to
> arbitration....

DE 17, at 2.

Its complaint, however, not only alleges that "PassTime was founded

in 1993 by Stanley Gordon Schwarz ('Schwarz') and Jeffrey Howard Frank

('J. Frank')," DE 1, at 2, ¶ 6, but appends what it says Vordermeier

"contends is a written employment agreement with PassTime, allegedly

executed by Schwarz shortly before he died."  I<u>d</u>. at 4, ¶ 19 and Exhibit D,

DE 1-4.

Although PassTime alleges that "[n]otably, PassTime's Board had

never seen the Purported Employment Agreement prior to Schwarz's death,"

<u>id</u>. at 5, ¶ 20, and "was never given the chance to consider, let alone

approve or authorize such an agreement of this significance," <u>id</u>. at ¶ 22,

PassTime at no point offers any evidence that Scharz, **One**, did not sign it,

**Two**, in his capacity as "Co-Founder and CEO."  <u>See</u> DE 1-4, at 12.  The

closest PassTime comes to any such allegation is to argue that

"[t]o the extent that Schwarz signed the Purported Employment Agreement, he was not acting on behalf of PassTime or in the interest of PassTime, but was acting in his and/or Vordermeier's interest and against the interests of PassTime."  DE 17, at 8, ¶ 36.

PassTime makes those claims not only in the Complaint, which is pending a motion to dismiss or stay, DE 16 and 18, but also in its Respondent's Answer and Counterclaim,[1] currently pending before Hon. Amy Dean (Ret.).[2]  The allegations of ¶ 19 are parroted in an introductory paragraph of a section entitled "As to the Vordheimer Statement of Claim," and ¶¶ 1, 2, 3, 4, 5, 6(a)-(f), 7, 9, 10, 11, 12, 13, 16, and 17 of the arbitration pleading, which replicate DE 1's ¶¶ 3, 4, 7, 8, 9, 10, 11, 12, 16, 26, 35, 36, 37, 38, 40, 44 and 49.

In the AAA proceeding, PassTime has expanded its attack on Vordermeier to include allegations of civil conspiracy (Count III), breach of the duty of loyalty (Count IV), breach of fiduciary duty (Count V), conversion (Count VI), unjust enrichment (Count VII) and a demand for contractural attorneys' fees and costs based on a confidentiality and non-disclosure agreement.

_____

[1]A copy of the Respondent' Answer and Counterclaim is appended as Attachment 1.

[2]A copy of the AAA's Notice of Appointment of Judge Dean is appended as Attachment 2.

## Applicable Law

**First**, as the Court of Appeals for the Eleventh Circuit has clearly

stated, "[u]nder normal circumstances, an arbitration provision within a

contract admittedly signed by the contractual parties is sufficient to require

the district court to send any controversies to arbitration." Chastain v.

Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992),

(affirming district court's decision that it, and not an arbitration panel, would

decide whether physician's daughter was required to arbitrate securities

claims arising out of an account that her father had opened for her, but

concerning which account the daughter swore that she had never signed an

arbitration agreement and the securities firm acknowledged that it had

neither her signature nor a power of attorney).[3] Chastain cited T R.

Enterprises v. Continental Grain Co., 613 F.3d, 1272, 1278 (5th Cir. 1980),[4]

which noted that "[t]o make a genuine issue entitling the plaintiff to a trial

by jury [on the issue of whether the parties had agreed to arbitrate], an

unequivocal denial that the agreement had been made was needed, and

---

[3]PassTime relies on Chastain for the truism that "if the validity of the arbitration agreement is at issue, the Court must determine if the arbitration clause is enforceable against the parties," DE 17, at 4, but ignores the fact that in the case at bar, it is not the arbitration clause that plaintiff is arguing is invalid, but rather the entire contract that contains that clause.

[4]In Bonner v. Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.

some evidence should have been produced to substantiate the denial." Id.

(citations omitted).[5]

   **Second**, referencing the Supreme Court's interpretation of §§ 2, 3 and

4 of the Arbitration Act[6] as requiring the arbitration of even a claim of fraud

in the inducement of a contract containing an arbitration clause, see Prima

Paint v. Flood Conklin, 388 U.S. 395, 403-404 (1967),[7] the Chastain court

observed that "the Prima Paint doctrine has been extended to require

arbitration panels to decide many issues regarding the validity of a contract

_____

   [5]How utterly confused PassTime's interpretation of T R Enterprises is,
is made clear by its relying on it to support the position that

> the purported arbitration provision in the Purported Employment
> Agreement is invalid and unenforceable, because PassTime never
> entered into the arbitration agreement in the first place[, and t]hus,
> the validity of the arbitration agreement is plainly at issue and
> PassTime is entitled to have the arbitrability question heard by the
> Court.

DE 17, at 5.  Such an appreciation of the message of T R Enterprises ignores
that court's focusing in on "[a] very obvious distinction between this case
and those cited by T R," which distinguishing feature is also present in case
at bar, i.e., "that in neither of those cases did the party seeking to avoid
arbitration sign the written agreement to arbitrate, whereas here it did."
613 F.2d at 1278.

   [6]See 9 U.S.C. §§ 2, 3 and 4.

   [7]The Prima Paint court stated, in pertinent part:

> [I]f the claim is fraud in the inducement of the arbitration clause itself
> — an issue which  goes to the 'making' of the agreement to arbitrate
> — the federal court may proceed to adjudicate it.  But the statutory
> language does not permit the federal court to consider claims of fraud
> in the inducement of the contract generally....

containing arbitration language — including allegations that such contracts are voidable because they involved duress, undue coercion, confusion, mutual mistake, or unconscionability."  957 F.2d at 855, citing Coleman v. Prudential Bache Sec., Inc., 802 F.2d 1350, 1352 (11th Cir. 1986) (per curiam); Merrill Lynch, Pierce, Fenner Smith, Inc. v. Haydu, 637 F.2d 391, 398 (5th Cir. Unit B Feb. 1981).    See also  Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (agreeing with courts of appeal that, subsequent to Prima Paint, "have since consistently concluded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and finding that "as a matter of federal law, any doubts concerning the scope of arbitrable issues  should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.")

*Third*, PassTimes's reliance on O.N. Equity Sales Co. v. Merkel, No. 2:07-cv-531-FtM-29DNF, 2008 U.S. Dist. LEXIS 81187, at *1-2 (M.D. Fla. Feb. 11, 2008) (citing Jackson v. Cintas Corp., 425 F.3d 1313, 1318 (11th Cir. 2005), for the proposition that "PassTime is entitled to discovery of this issue," i.e., "whether the parties entered into a valid arbitration agreement and whether Vordermeier's claim is subject to arbitration," is off-point.  In the case at bar, the only questions raised by the plaintiff is the

potential infirmity of the overall employment agreement, not the arbitration clause it contains.  As the Merkel court stated, "[t]he discovery that is permissible until a determination is made as to whether this action will go to arbitration must be related to the impact on the enforceability of the arbitration clause."  Slip Op, at 2.

**Fourth**, Howsam v. Dean Witter Reynolds, 537 U.S. 79 (2002) and Kelly v. Merrill Lynch, Pierce, Fenner & Smith, 985 F.2d 1067 (11th Cir. 1993) are inapposite.  Howsam provides the plaintiff with the undisputable bon mot that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," 537 U.S. at 83, but left to a National Association of Securities Dealers ("NASD") arbitrator the decision of whether to apply what was essentially a six-year limitations period contained in an NASD rule to a particular case.  In so doing, however, the Court while discussing how "questions of arbitratibility" are for courts, not arbitrators, to decide, the Court explicated that while "[l]inguistically speaking, one might call any potentially dispositive gateway question a 'qestion of arbitrability,'" 537 U.S. at 83, "[t]he Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase 'question of arbitrability' has a far more limited scope." Id. (citation omitted).  Kelly merely makes clear that a federal court may protect its judgment by enjoining unsuccessful litigants from having another go at a settled issue by taking it to arbitration.  It has nothing to do with the case at bar.

### Application of the Law to the Facts in the Case at Bar

Under the Prima Paint doctrine, as re-articulated by the Chastain court, the only way that PassTime could pluck Vordermeier's Employment Agreement claim from the arbitration that he has commenced — and in which PassTime has now joined, including by filing a counterclaim — would be by alleging that there was fraud in the inclusion of the arbitration agreement at ¶ 13 of the Employment Agreement.  No such allegation appears in the complaint or the motion.  Nor is there any allegations, as there was in Chastain, that Schwarz did not sign the Employment Agreement containing the arbitration clause.  In such an absence of "an unequivocal denial that the agreement had been made … , and some evidence … to substantiate the denial," T R Enterprises, the arbitration must proceed.

Although the allegations that PassTime makes against Vordermeier are serious ones, they are allegations that can — and must under the Arbitration Act — be dealt with by an AAA arbitrator, who in the instant case is a seasoned, retired jurist quite capable of doing so.  That is what Vordermeier and Schwarz, who signed the Employment Agreement as "Co Founder and [Chief Executive Officer]," see DE 1-4, at 12, intended.  And that is what PassTime is now doing with its AAA Respondent's Answer and Counterclaim filed last Monday, December 4.  And that is what must continue to be done to comport with the Arbitration Act, Prima Paint and its progeny.

## Conclusion

Based on the authorities cited and the arguments presented, defendant, Alan Vordermeier, respectfully requests this court to deny Plaintiff's Renewed Motion to Stay Arbitration and to grant such other and further relief as is just.

Respectfully submitted,

/s/ William R. Amlong
WILLIAM R. AMLONG
Florida Bar No.:  470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No.:  275565
KAmlong@TheAmlongFirm.com
JENNIFER DALEY
Florida Bar No.:   0856436
JDaley@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301-1154
(954) 462-1983

**Attorneys for the Defendant,
Alan Vordermeier**

## Certificate of Service

I hereby certify that a true and correct copy of the above was served via the Southern District of Florida's CM/ECF system on this 11th day of December, 2017 to counsel of record.

/s/ William R. Amlong
WILLIAM R. AMLONG